UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRA GRAHAM,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WAL-MART STORES, INC. and<br>GENERAL ELECTRIC COMPANY,<br><br>　　　　　Defendants. | No. 2:14-cv-02916-MCE-CMK<br><br>**MEMORANDUM AND ORDER** |

Through the present lawsuit, Plaintiff Tyra Graham ("Plaintiff") seeks damages for injuries suffered while operating a food processor purchased at a facility operated by Defendant Wal-Mart Stores, Inc. ("Wal-Mart") in Linda, California. Plaintiff alleges the food processor was defective in its design and/or manufacture at the time it left Wal-Mart's possession, that Wal-Mart was aware of these defects, and that these defects proximately caused her injuries. Plaintiff further asserts causes of action for strict liability, negligence, breach of warranty, and fraudulent concealment and seeks compensatory as well as punitive damages. Federal jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332 inasmuch as Plaintiff is a resident of the State of California and Wal-Mart is a corporation organized under the laws of the State of Delaware with its principal place of business in Arkansas. Pl.'s Compl., ¶¶ 1-2.

Presently before the Court is Wal-Mart's Motion for Partial Summary Judgment (ECF No. 56) on Plaintiff's claims for fraudulent concealment and punitive damages. Plaintiff filed a timely opposition on November 28, 2016 (ECF No. 62), which included Plaintiff's own Statement of Undisputed Facts. Wal-Mart neither filed a reply nor objected to the undisputed facts advanced by Plaintiff. For the reasons set forth below, Wal-Mart's Motion is DENIED.[1]

## BACKGROUND

On November 5, 2010, Plaintiff purchased a General Electric-branded 14-cup Food Processor Model #169203 ("food processor") which was designed, imported, and sold exclusively by Wal-Mart. Plaintiff's Statement of Undisputed Facts ("PUF") Nos. 1, 24. After using the food processor for nearly four years, it suddenly stopped while Plaintiff was chopping mushrooms on September 14, 2014. Plaintiff took the lid off and attempted to twist the blade to unjam the machine. Despite being equipped with a safety interlock designed to prevent the blade from spinning while the lid was dislodged, the blade re-engaged and sliced Plaintiff's fingers. Id. at 31.

Wal-Mart moves for summary adjudication as to Plaintiff's fraudulent concealment claim on grounds that it voluntarily pulled the food processor from its shelves in February 2011, and also voluntarily recalled the machine on May 25, 2011, over three years before Plaintiff's injury, and therefore cannot show any intent to conceal. See Tackett Aff., Ex. A. Wal-Mart further claims there is no basis for punitive damages in the absence of any clear and convincing evidence of "oppression, fraud, or malice" on the part of any Wal-Mart managing agent. See Cal Civ. Code § 3294(a),(b).

Wal-Mart began selling this model of food processor in September 2009. PUF No. 3. As indicated above, it contained a safety interlock feature designed to prevent

---

[1] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with Local Rule 230(g).

rotation of the blades if the lid was not properly locked on; this feature was advertised on the box. Id. at No. 2. The safety interlock feature as advertised by Wal-Mart on the food processor's box was one of the reasons Plaintiff purchased the food processor. Graham Dep. at 70-72. Pl.'s Ex. 24. Plaintiff claims she purchased the product in reliance of Wal-Mart's assurances that the interlock feature would work as advertised. Id.

Wal-Mart knew the safety interlock feature was defective as early as March 2009, well before Plaintiff purchased her food processor in November 2010. PUF at No. 4. In September 2010, the third-party testing results supplied to Wal-Mart showed that the safety interlock had failed on 6% of examined food processors. Id. at No. 15. Wal-Mart voluntarily decided to stop selling the machine in February 2011 by pulling the processor off its shelves. After the Consumer Product Safety Commission asked that Wal-Mart provide a report on incidents involving the food processor, on May 25, 2011, it finally issued a recall for all food processors sold on grounds that "the safety interlock system on the recalled food processor can fail allowing operation without the lid secured, posing a laceration hazard." Id. at No. 27-28. By this time, some 21 consumers had been injured. Id. at No. 28.

The undisputed facts also show that Wal-Mart knew that injuries had occurred from use of the food processor prior to Plaintiff's November 2010 purchase. In March and April of 2010, Wal-Mart learned that two California consumers had been injured when the safety interlock on the machine failed and its blades began to spontaneously spin. Id. at Nos. 12-13.

In September 2010, in order to address the issue, the Chinese manufacturer of the food processor suggested shortening the drive shaft. Id. at No. 16. While Wal-Mart decided that food processors would no longer be shipped until the design correction was addressed, it apparently did nothing to stop the sale of food processors already in the United States, or to recall the 170,861 machines that had already been sold at profits to Wal-Mart ultimately totaling some $3.8 million. Id. at Nos. 19, 32. In the meantime, prior to the time Plaintiff bought her food processor from Wal-Mart on November 5, 2010,

3

Wal-Mart had learned that at least two other consumers had been injured between September and November of 2010 by the machine's safety interlock failure. Id. at 21, 23.

It is undisputed that Wal-Mart had the ability to remove the food processor from store shelves at any point it wished. Id. at No. 29. Cara Rose ("Rose"), a Wal-Mart Senior Manager for Product Safety and Compliance whose responsibilities included deciding whether to pull a product for quality or safety reasons, had the authority to remove offending items from store shelves. Rose Dep. at 18:2-9; 24:2-9; 29:9-19. Ex. 23 to Pl.'s Opp. According to Plaintiff, Ms. Rose "did not issue a pull-and-hold[2] on the Food Processor until after the Plaintiff purchased it, despite being kept informed of the number of injuries caused by the defect and the 3rd party test results showing there was a defect with the safety interlock." Pl.'s Opp., ECF No. 62, p. 13.

After Wal-Mart issued the recall of the subject food processor in May 2011, notice of the recall was posted in Wal-Mart stores on a bulletin board next to the back bathroom, a bulletin board at the service desk, and on their recall webpage. Id. at No. 30.

In now requesting summary judgment on Plaintiff's fraudulent concealment cause of action, Wal-Mart argues that the voluntary recall and notices of the recall posted three years prior to Plaintiff's injury were sufficient to inform Plaintiff of the defect, and that there is accordingly no evidence of fraudulent concealment. Plaintiff, on the other hand, claims that despite the recall, Wal-Mart knew at the time she purchased the food processor that its safety interlock feature was dysfunctional yet continued to induce consumers to purchase the machine. In addition, as to Plaintiff's punitive damages claim, Wal-Mart argues there is no clear and convincing evidence that Rose, as a managing agent for Wal-Mart, acted with "oppression, fraud, or malice," and thereby subjected Wal-Mart to exemplary damages, when she decided not to pull the food

---

[2] A "pull-and-hold" is a request Wal-Mart sends to its stores to pull a product from store shelves. Rose Dep., 27:14-22.

4

processor from store shelves before Plaintiff made her purchase. Plaintiff, on the other hand, contends that Rose's decision to keep the food processor in Wal-Mart stores, despite knowing that its defect had injured consumers, satisfies the requisite standard.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.

///

Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

In order to withstand the present motion for partial summary judgment, Plaintiff need only demonstrate a viable cause of action such that a "fair minded jury could return a verdict for [Plaintiff] on the evidence presented." Anderson, 477 U.S. at 252. In both Plaintiff's fraudulent concealment cause of action as well as her punitive damages claim against Wal-Mart, Plaintiff has presented evidence which, at a minimum, raises triable issues of fact precluding summary adjudication.

**A.    Fraudulent Concealment**

The elements of a fraudulent concealment cause of action are (1) a concealment; 2) knowledge of its falsity; 3) intent to induce reliance; 4) justifiable reliance; and 5) resulting damages. Lincoln General Ins. Co. v. Access Claims Adm'rs, Inc., 596 F. Supp. 2d 1351, 1372 (E.D. Cal. 2009), citing Agosta v. Astor, 120 Cal. App. 4th 596, 603 (2004).

Wal-Mart argues that Plaintiff cannot make a showing sufficient to establish existence of an essential element since Wal-Mart voluntarily recalled the food processor some three years prior to Plaintiff's injury and posted notices of the recall in their stores and on their website. Thus, according to Wal-Mart, Plaintiff cannot show that Wal-Mart intended to induce Plaintiff's reliance through misrepresentations or through an effort to conceal facts.

Wal-Mart's argument in this regard is misplaced. Prior to selling the food processor to Plaintiff, Wal-Mart knew the safety interlock feature was defective and that at least 21 consumers had been injured as a result of the safety feature failing. Under these circumstances, and in resolving all inferences in favor of the non-moving party as the Court must do on summary judgment (Anderson, 477 U.S. at 255), Wal-Mart sold the

food processor to Plaintiff by marketing the safety interlock feature and concealing the fact that several consumers had sustained injuries while using the product. Plaintiff has advanced enough evidence to allow a trier of fact to conclude that Wal-Mart had knowledge of the safety interlock defect, that it intended to induce Plaintiff's reliance by advertising the safety interlock feature, that Plaintiff was unaware of product defect, and that Plaintiff detrimentally relied on the product to work as safely as Wal-Mart advertised it would. A reasonable jury could find that Wal-Mart's misrepresentations in this regard alone amount to fraudulent concealment, irrespective of whether Plaintiff should have been aware of the food processor's recall after 2011. Wal-Mart's request for summary adjudication as to Plaintiff's fraudulent concealment claim must therefore be DENIED.

**B.     Punitive Damages**

In a lawsuit against a corporate defendant, "to prevail on a claim for punitive damages, a plaintiff must establish both 'oppression, fraud, *or* malice' and that the conduct at issue was performed or ratified by an 'officer, director, or managing agent' by clear and convincing evidence. Holtzclaw v. Certainteed Corp., 795 F. Supp 2d 996, 1021 (E.D. Cal. 2011), quoting Barton v. Alexander Life Ins. Co. of Amer., 110 Cal. App. 4th 1640, 1644 (2003). "Managing agents are employees who 'exercise substantial discretionary authority over decisions that ultimately determine corporate policy.'" Id. at 1022, quoting Cruz v. HomeBase, 83 Cal. App. 4th 160, 167 (2000). Malice is "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights…of others." Cal. Civ. Code § 3294(c)(1).

It is Wal-Mart's position that Plaintiff has not provided clear and convincing evidence that Wal-Mart's actions were malicious as that term is defined above, or that such actions if they did occur were ratified by a managing agent. However, Plaintiff has adequately presented enough evidence to create a triable issue of fact. Plaintiff has shown that Rose was the Senior Manager of the Recalls, Reporting, Analytics and Product Safety and Compliance Department for Wal-Mart. Plaintiff has also adduced

8

evidence that Rose had knowledge of the food processor's defective and dangerous safety interlock feature before Plaintiff purchased her unit, yet failed to either pull the product from store shelves or recall the processor until after Plaintiff's purchase. According to Plaintiff, this resulted in her having "unwittingly purchased the Food Processor, totally in the dark as to the fundamental safety defect that Wal-Mart already knew existed." Pl.'s Opp., pp. 14-15.

Because it appears that Rose was acting as Wal-Mart's managing agent in making decisions about the food processor as enumerated above, the Court cannot conclude that a fair minded jury could not properly assess punitive damages against Wal-Mart for acting in conscious disregard of Plaintiff's rights. Wal-Mart's effort to foreclose the possibility of punitive damages against it through summary adjudication therefore also fails.

## CONCLUSION

For all the foregoing reasons, Wal-Mart's Motion for Partial Summary Judgment (ECF No. 56) is DENIED in its entirety.[3]

IT IS SO ORDERED.

Dated: August 29, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[3] The Court also notes that in response to Wal-Mart's Motion for Partial Summary Judgment, Plaintiff filed a Motion to Strike that Motion as untimely. The Court's October 19, 2015 Pretrial Scheduling Order (ECF No. 20) required that Wal-Mart file this motion at least eight weeks prior to the hearing and on July 29, 2016, the Court ordered that "any dispositive motions in this matter must be heard not later than December 15, 2016." ECF No. 52, p. 3. While Wal-Mart noticed their motion in accordance with the December 15, 2016 hearing deadline, it filed its motion on November 14, 2016, just over a month beforehand, and well less than the eight-week period required by the Scheduling Order. The Motion was, however, filed in accordance with E.D. Local Rule 230, which requires only twenty-eight days' notice. Because of not-infrequent confusion caused by that discrepancy in other cases, the Court has elected to adjudicate Wal-Mart's Motion on the merits as set forth above. Plaintiff's Motion to Strike (ECF No. 61) is accordingly DENIED.

9